[Civ. No. 4669.  Third Appellate District.—May 31, 1933.]

JOHN E. KELLER, Respondent, v. FANNIE M. KELLER, Appellant.

Clifford A. Russell, George E. McCutchen and Johnson & Lemmon for Appellant.

Darlington & Lyon and White, Miller, Needham, Harber & Merina for Respondent.

THOMPSON, J.—The respondent secured a decree of divorce from the appellant on the ground of extreme cruelty. The real and personal property possessed by the spouses was divided between them. It was all held as community property. In a cross-complaint the defendant also asked for a divorce from the plaintiff on the ground of cruelty. This was denied. From the interlocutory decree which was entered the defendant has appealed.

A reversal of the judgment is sought on the grounds that the interlocutory decree is not supported by the evidence chiefly because it is asserted the alleged acts of cruelty are not adequately corroborated; that the court erred in assigning to the plaintiff lots 5, 6, 7 and 8 of Bijou Park, a subdivision in El Dorado County, which tract is claimed as the separate property of the defendant; that the family homestead known as "Homecrest," which was assigned to the defendant was her separate property and should not have been taken into account in distributing their community property, and that the court erred in denying defendant's plea for a divorce as set out in her cross-complaint and in denying the motion for a new trial.

The evidence respecting the charges of cruelty on the part of both the plaintiff and the defendant is conflicting. The plaintiff was previously married and divorced. The plaintiff and defendant were married at Goldsboro, North Carolina, September 19, 1909. They lived together as husband and wife for twenty-one years. Two sons were born as the issue of the marriage. Both are fully grown. It is conceded that it is impossible for the spouses to continue to live together as husband and wife. Their differences are irreconcilable. The chief controversy on this appeal is concerning the distribution of the property.

At and prior to their marriage the plaintiff and defendant were engaged in the profession as actors on the public stage. For several years they traveled together and appeared upon the same programs. There is satisfactory evidence that for a year prior to their marriage their earnings were commingled in the same bank account. The defendant took charge of this bank account and had possession of the passbook. The plaintiff had implicit confidence in her ability and honesty. She appears to have been the business manager of their joint enterprise. During this early period

no account was ever rendered between them. Joint accounts were kept in a Brooklyn bank and subsequently in a Kansas City bank. The defendant failed to produce at the trial the pass-books covering several years during which these accounts were maintained. The court was unable to obtain an accurate statement of these accounts.

As soon as the divorce from plaintiff's first wife was secured these parties were married. About the time of their marriage it was contemplated they might ultimately settle in Brooklyn, where the mother of the defendant resided. With this in view they purchased a lot adjoining the home of Mrs. Keller's mother. It was purchased subject to a mortgage which was subsequently paid from their community funds. The defendant contends this lot was purchased with her separate money, and that this lot furnished a nucleus from which the Placerville homestead was afterwards purchased. Reasonable inference, however, may be drawn from the evidence indicating that the initial payments upon this Brooklyn property were made from the joint funds of the spouses, which account was in charge of the defendant.

In 1919 the spouses abandoned their profession of acting and settled in Placerville, where they established a real estate business which prospered. They were successful in disposing of several subdivisions. They accumulated considerable real and personal property. It was their custom to take deeds to many parcels of land which they acquired in the name of the defendant. Deeds of reconveyance of these properties were, however, immediately executed by her to the plaintiff. These deeds were not recorded. This appears to have been solely for business convenience. During the many years of their married life the defendant made no claim to any of these parcels of land as her separate property. It would be futile and arduous to attempt to trace the title to these many tracts of land through the intricate details of a multitude of transactions covering over twenty years of married life. It is unnecessary to say that the five hundred page transcript on appeal in this case contains an inexorable conflict of evidence respecting the title to both real and personal property. It is sufficient to say there is substantial evidence derived from facts, circumstances and necessary inferences disclosed by the record to support the court's findings to the effect that all

of the real and personal property which is distributed between the parties hereto, including the Bijou Park tract and the Placerville homestead, were the community property of the spouses. The decree is therefore adequately supported by the evidence so far as the title to the property is concerned.

The complaint charged the defendant with extreme cruelty toward plaintiff consisting of acts which caused him grievous mental suffering. No acts of physical violence were charged. The court found that the defendant wrongfully accused plaintiff with having been intimate with other women; that upon numerous occasions, without previous notice, the defendant left home and remained away for several days at a time without informing plaintiff of her whereabouts; that the defendant often visited the real estate office of the plaintiff and abused and quarreled with him in the presence of customers and employees to his great embarrassment and the detriment of their business, and that the defendant frequently used opprobrious language toward the plaintiff in the presence of their children and others.

All of these findings are adequately supported by evidence on the part of plaintiff by the recital of numerous incidents which occurred frequently during a period of about three years prior to their separation. Many of these incidents are corroborated by other disinterested witnesses. The findings and decree are sufficiently corroborated. Both sons were witnesses at the trial and corroborated their father generally regarding the defendant's disrespectful and abusive treatment of her husband. Howard Keller confirmed his father's charge that his wife had wrongfully accused him of having been intimate with another woman whose name she mentioned. At least half a dozen witnesses corroborated plaintiff's testimony to the effect that the defendant was generally abusive, quarrelsome and critical of him. A number of specific incidents were also corroborated. At least two employees in the real estate office related circumstances which occurred on several occasions when she engaged in quarrels with the plaintiff in the presence of customers, degrading, belittling and criticising him without cause.

We are satisfied the court's findings that the defendant was guilty of extreme cruelty as above specified are sufficiently supported by the evidence. There is proof that this conduct

on the part of the defendant caused the plaintiff grievous mental suffering. A disinterested witness testified that plaintiff's health was impaired and that he became sick and extremely nervous on that account and that he was therefore unable to properly attend to his business.

Where there is no evidence of collusion between the parties, and upon the contrary, where both spouses seek a divorce on the grounds of cruelty, and concede that it is impossible for them to continue to live together as husband and wife, a reviewing court may be justified in supporting a judgment of divorce upon corroboration which might otherwise be examined more critically. It is true that a divorce may not be granted on the uncorroborated testimony of a party to the action. (Sec. 130, Civ. Code.) But this does not mean that each and all charges of cruelty upon which a party relies must be corroborated by evidence other than that which is furnished by the complainant. It has been said that the chief reason the law requires corroboration in divorce proceedings is to avoid collusion between the parties. (9 Cal. Jur. 731, sec. 89.) However, the statute above cited does require substantial corroboration in a divorce case even when it is apparent there is no collusion between the parties to the suit. It is not necessary that each of the charges of cruelty upon which a party relies for a divorce shall be corroborated by other evidence. It is sufficient if there is substantial corroboration supplying evidence of facts, circumstances or necessary inferences in support of one or more of the material charges constituting such extreme cruelty as will warrant the granting of a divorce on that ground. (9 Cal. Jur. 738, sec. 96; *Percy* v. *Percy*, 188 Cal. 765 [207 Pac. 369]; *Hill* v. *Hill*, 106 Cal. App. 309 [289 Pac. 227]; *Wilson* v. *Wilson*, 124 Cal. App. 655 [13 Pac. (2d) 376].)

For the reasons heretofore assigned we are also of the opinion there is ample evidence to support the findings of court and that portion of the decree which denies the defendant a divorce upon her cross-complaint, in spite of the fact that there is a conflict upon the issues which are therein contained.

Finally it is contended the court erred in denying defendant's motion for a new trial upon the ground of newly discovered evidence to the effect that the plaintiff was not

finally divorced from his first wife at the time of his alleged marriage to the defendant.

While section 963 of the Code of Civil Procedure does not authorize an appeal from an order denying a motion for new trial, that order may be properly reviewed on appeal from the judgment, under the provisions of section 956 of the same code.

The defendant affirmatively alleged that she was married to the plaintiff September 19, 1909. The cause was tried in June, 1931. The court found that the parties were married on September 19, 1909. These findings were filed September 24, 1931. An interlocutory decree of divorce was accordingly entered. Subsequently the defendant moved for a new trial on the ground, among others, of newly discovered evidence. This motion was supported by affidavits and a proposed amended answer in which it was asserted for the first time that the plaintiff and defendant were never legally married for the reason that plaintiff had not secured a divorce from his first wife at the time of the purported marriage of these parties on September 19, 1909. The counter-affidavit of plaintiff was filed in opposition to this motion, in which he averred that he was divorced from his first wife, Clara Keller, in the state of Kansas by a decree which was rendered September 17, 1909. The motion for a new trial was thereupon denied. ■ It is not contended the belated application to file an amended answer was made to conform to the evidence adduced at the trial. There was no issue at the trial regarding the plaintiff's former divorce. The proposed amended answer alleges that "a purported marriage ceremony was performed at Goldsboro, North Carolina, upon the 19th day of September, 1909". The affidavit of the plaintiff avers that he was divorced from his former wife two days prior thereto. It may be conceded that under the provisions of section 473 of the Code of Civil Procedure, in the furtherance of justice, a court, in the exercise of sound discretion may permit an amendment to pleadings at any time prior to the entry of judgment, particularly when the amendment is sought to conform to the evidence. Such amendments are permitted only in the sound discretion of the court, and will not be interfered with on appeal except for a clear abuse of discretion. (21 Cal. Jur. 181, sec. 126; 49 C. J. 472, sec. 597; *Dressler* v. *Johnston,* 131 Cal. App. 690

[21 Pac. (2d) 969]; *Coyle* v. *Coyle,* 212 Cal. 715 [300 Pac. 5].) Except for the relief afforded in the furtherance of justice, by section 473, *supra,* to file an amended pleading, there is no statute of California allowing this to be done after a judgment has been rendered. Regarding the right to file such amended pleadings, the text which is found in 49 C. J. 483, section 623, says:

"In the absence of statutory authority express or implied amendments of the pleadings cannot be made after judgment, unless such judgment has been vacated. But under statutory sanction such amendment may be permitted. This power, it is said, must be sparingly exercised, and in any event an amendment will be allowed only for the purpose of sustaining the judgment, and not for the purpose of reversing it. The allowance of amendments after judgment is always in the discretion of the court."

This cause was tried on the theory that a valid marriage existed between the plaintiff and the defendant. That fact was never questioned during the trial. Since the record of the divorce of plaintiff from his former wife was readily available, and these discreet intelligent parties recognized the validity of their marriage by participating in a formal wedding ceremony and by living as husband and wife for twenty-one years, after a hotly contested divorce trial which lasted many days, and after the adoption of findings and the rendering of a decree holding that the marriage was valid, a trial court may well look with suspicion upon an affidavit which is filed for the first time on motion for a new trial, in which it is merely averred in general terms that at the time of the marriage which is here involved, the plaintiff was incapable of consummating marriage with the defendant because he was then married to another living woman from whom he had not secured a divorce. These circumstances should be considered in determining whether the trial judge abused his discretion in denying the motion to file an amended answer. There is no evidence of an abuse of discretion. The motion to file an amended answer was properly denied.

A motion for new trial upon the ground of newly discovered evidence should not be granted except upon a strong and satisfactory showing of the materiality and truth of the new evidence, together with an affirmative showing

that the moving party was not guilty of laches in failing to discover the evidence in time for the trial. (20 Cal. Jur. 183, sec. 120; *Arnold* v. *Skaggs,* 35 Cal. 684; *Putnam* v. *Pickwick Stages,* 98 Cal. App. 268 [276 Pac. 1055, 1057].) In the case last cited it is said:

"To justify the granting of the motion on the ground of newly discovered evidence the moving party must make a strong case and must show due diligence to discover and produce the evidence on a former trial, and that his failure to do so was not the result of his own laches; and the action of the trial court will not be disturbed except upon a clear showing of an abuse of discretion."

The records of the court where the plaintiff secured his former divorce were available. We must assume these records disclose the fact that he was divorced prior to his marriage with the defendant. There is no showing of an abuse of discretion on the part of the trial judge in denying the motion for a new trial in the present case.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.