[Civ. No. 4557. Third Appellate District.—April 27, 1932.]

R. R. MORRIS et al., Appellants, v. WHITTIER AMUSE-MENT COMPANY (a Corporation) et al., Respondents.

R. T. Walters for Appellants.

Frank G. Swain for Respondents.

TUTTLE, J., *pro tem.*—This is an action brought to recover secret profits arising from the sale of real property. The trial court sustained a demurrer to the complaint, without leave to amend. Judgment was entered for defendant and the appeal is prosecuted from said judgment.

The complaint alleges that on March 9, 1923, plaintiffs and some of the persons named as defendants associated themselves together for the purpose of purchasing Scenic Theater Building in the city of Whittier, California, from defendants Thuman Berry and Louise Berry; that it was agreed between defendant Harris and the other parties that none of them should charge or receive a commission for purchasing or securing title to said property; that defendant Harris was selected by said intended purchasers as their representative and agent to secure from defendants Berry their lowest purchase price for said property and to negotiate the sale thereof to all of said parties, including plaintiffs and Harris, and a corporation to be thereafter organized by them; that Harris agreed to and did act as such agent; that Harris interviewed the owners of said property and was told that the lowest price was $125,000; that Harris then stated to the Berrys that he desired to make a secret profit, and agreed with the owners that he should report to his associates that the lowest price was $135,000; and that they would split the added $10,000 between them, by means of a fictitious note; that Harris falsely and fraudulently reported to his associates that the purchase price for said property was $135,000, and he concealed from them that he had received a dummy note for $10,000; that said parties pur-

chased said property for the sum of $135,000; that title to said property was taken in the names of Siler and Gwin, who were to hold the same and deed it to a corporation to be formed by said parties; that said corporation, Whittier Amusement Company, was formed, and the property deeded to it; that plaintiffs paid $20,000 toward the price of said property and received for the same 200 shares of stock in said corporation; that the total cash investment in said property by said parties was $75,000; that defendant Harris received 100 shares of stock for his dummy note of $10,000; that thereafter plaintiffs and their associates and said corporation discovered for the first time that Harris and Berry had made a secret profit from said sale, and the corporation demanded from them a return of the 100 shares of stock; that this stock was returned to the corporation and is now held by it; that plaintiffs are entitled to a 20/75 share of said stock.

The sole question here presented is the right of plaintiffs to maintain the action. Respondents contend that the secret profits belong to the corporation, while appellants contend that they belong to the original organizers who furnished and paid the purchase price.

The rights and liabilities of the parties who thus associate themselves for the purpose of acquiring the property, and afterward forming the corporation, are governed by the same principles as those applying to joint adventures. (7 R. C. L. 86; 33 C. J. 846; *Miller* v. *Walser,* 42 Nev. 497 [181 Pac. 437].) A joint adventurer who undertakes to purchase property for the joint account of himself and his associates occupies a fiduciary relation to them as respects such property. (33 C. J., p. 855.) In accordance with the principles of good faith and confidence governing the relations of joint adventurers, a coadventurer may not conceal his interest or his profits from his associates in the enterprise. None will be allowed to obtain by secret agreement any advantage over the other. (*Menefee* v. *Oxman,* 42 Cal. App. 81 [183 Pac. 379]; *Munson* v. *Fishburn,* 183 Cal. 206 [190 Pac. 808].) ''Promoters, like other joint adventurers, and like parties generally, occupy a relation of trust and confidence, so that they must act toward each other with the utmost good faith, and if one or more are guilty of any fraud or breach of trust against the others, by taking

a secret profit, misappropriating funds, or otherwise, they will be compelled to account in equity as in other like cases." (14 C. J., p. 281.) ▉ The foregoing authorities clearly establish the rights and liabilities of these associates, *per se.* It would appear that the transaction here detailed was a matter entirely between themselves.

We are aware of the general rule that where a secret profit is gained through a fraudulent contract made *between the corporation and the promoter,* the corporation is the party directly injured by the fraud, and is, therefore, the proper party to bring the action. (1 Fletcher, Cyc. Corp., p. 297.) Or, as stated elsewhere, "where the collective or corporate rights of the shareholders have been infringed, the company is the proper party plaintiff". (1 Thompson, Corp., 2d ed., sec. 111, citing 1 Morawetz Corp., sec. 292.) The solution of the question as to who may maintain this action depends upon the answer to the question, "Who was injured by the fraud of Harris?" We cannot see how the corporation is the aggrieved party. The alleged fraudulent sale was not made to it, but to the associates, at a time when the corporation was not in existence. *The sale to the corporation is not questioned.* We must assume that the property was worth what the corporation paid for it. None of the dealings between the associates and the corporation is attacked, and we may assume they were fair and honest. As we view it, the injury was not suffered by the corporation but by the associates, who paid their cash for the property, and who were defrauded by their own agent. We have examined the cases which are cited by Thompson and Morawetz, in support of the rule referred to, and find that each of them involves an attack upon dealings *between the promoters and the corporation.* Under such circumstances, the corporation is the proper party to bring the action. Here the sum of $10,000 was taken directly out of the pockets of the associates, and it certainly would be unfair and unjust to permit subsequent stockholders to share in the benefit of any reimbursement. We believe that this sum belongs equitably to those who advanced and paid it, and that plaintiffs are entitled to recover their *pro rata* share thereof.

Great reliance is placed by respondents in the case of *Ex-Mission Land & Water Co.* v. *Flash,* 97 Cal. 610 [32 Pac. 600]. There it was held that the corporation was the

party directly injured by the fraud, and entitled to bring the action. In that case, however, the court found that it never was the intention of the subscribers of stock to purchase the land, but merely to take stock in a corporation thereafter to be organized. The *action was not brought to recover secret profits,* but to cancel the note and mortgage of the corporation, alleged to have been executed through fraud. The procuring of these documents under such circumstances was clearly a case where "the collective or corporate rights of the shareholders have been infringed".

 This secret profit of $10,000 is now represented by the 100 shares of stock, which was the personal property of Harris and is now in the possession of the corporation. Equity will follow these illicit gains, no matter in what form they may be, and restore them to the party defrauded, providing that the rights of innocent third parties have not intervened.

We therefore hold that the trial court erred in sustaining the demurrer.

It is ordered that the judgment be reversed, with directions to the trial court to overrule the demurrer.

Thompson (R. L.), J., and Preston, P. J., concurred.