Filed 9/30/15  Rustling Oaks v. Citibank CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RUSTLING OAKS, LLC, | B255897 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC 505797) |
| v. | |
| CITIBANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Susan Bryant-Deason, Judge.  Affirmed in part and reversed in part.

Ecoff Law, Ecoff Landsberg and Lawrence C. Ecoff for Plaintiff and Appellant.

Fidelity National Law Group and Patricia L. Swatt for Defendant and Respondent.

_____

Rustling Oaks, LLC (Rustling Oaks), appeals from the judgment dismissing its action after the trial court sustained without leave to amend Citibank N.A.'s demurrer to its complaint in this action on the basis of res judicata. We conclude that res judicata is a bar to only two of the four causes of action, and therefore reverse the judgment to allow Rustling Oaks to proceed on the remaining causes of action.

## BACKGROUND

Rustling Oaks's complaint in this case sought to quiet title to residential property located on Rustling Oaks Drive in Agoura Hills (the property), obtain declaratory relief regarding the title to the property and the rights and obligations of the parties, cancel an assignment of a deed of trust, and enjoin sale of the property. The complaint alleges that Rustling Oaks acquired title to the property in 2012 or 2013 through the Morrison Ranch Estates Homeowners Association (the Association), which acquired its title through a 2012 trustee's sale foreclosing upon a delinquent assessment lien recorded in 2009.

During the time in which Rustling Oaks alleges it and its predecessor, the Association, acquired title there were two pertinent pending court cases that affected the title to, and encumbrances upon, the property: a dissolution of marriage action in Ventura County Superior Court (No. SD034117) and an action by Citibank for judicial foreclosure in Los Angeles County Superior Court (No. BC448518). We recount the chronology and nature of the pertinent events affecting the Property based upon the allegations of the complaint in this case, and the superior court record in the judicial foreclosure action, which was judicially noticed by the trial court in ruling upon Citibank's demurrer and by this court in deciding this appeal, following notice to the parties.

**Events preceding the judicial foreclosure action**

The declaration of covenants, conditions, and restrictions of Morrison Ranch Estates (CCR's) that were applicable to the property were recorded in 1979. Article VII, paragraph 7.06(e) of that declaration provides that an assessment lien for delinquent fees "shall be subordinate to the lien of any mortgage or mortgages or deeds of trust now or

2

hereafter placed upon the properties subject to assessment" with respect to foreclosure of such mortgage or deed of trust.

The property was the residence of Gregory and Jacyra Norman. A 2003 deed of trust recorded against the property listed it as the separate property of Gregory Norman. Jacyra Norman filed for dissolution of marriage in Ventura County on May 24, 2006. (Super. Ct. Ventura County, No. SD034117.) The Ventura County Superior Court allowed Gregory Norman to refinance the property and therefore ordered expungement of the lis pendens Jacyra Norman had recorded in Los Angeles County[1] on August 14, 2006, to allow the refinancing to be completed. On June 19, 2007, Gregory Norman obtained a $700,000 loan from Quality Home Loans, secured by a deed of trust recorded against the property on June 28, 2007. A large portion of the proceeds paid off the loan secured by the 2003 deed of trust. The loan apparently was transferred to Countrywide Home Loans Servicing at some point, then transferred again, this time to BAC Home Loans Servicing, LP (BAC), on July 31, 2007. In the complaint in the judicial foreclosure action, Citibank alleged it acquired the loan on August 1, 2007.

Unfortunately for the state of the property's title, Jacyra Norman did not record a new lis pendens immediately after the refinancing, but waited until May 5, 2008, to do so. In the interim, Gregory Norman conveyed the property to William Carter on October 23, 2007. Six days later, they entered into an agreement providing Carter would purchase the property from Gregory Norman for $1,175,000. Then, on November 2, 2007, the Association recorded a notice of delinquent assessments and lien. The deed by which Gregory Norman conveyed the property to Carter and the associated purchase contract were recorded on June 3, 2008.

On May 22, 2008, Ventura County Superior Court Judge Charles W. Campbell voided the "Countrywide" refinancing and enjoined "Countrywide" from foreclosing. The dissolution action was set for trial on September 22, 2008, but Gregory Norman did

---

[1] All documents mentioned in this opinion as "recorded" were recorded in Los Angeles County.

3

not appear. "Countrywide" appeared through counsel. The court entered judgment of dissolution and ordered a division of property and debts. The judgment reiterated that the "Countrywide" mortgage refinance loan was void; ordered Gregory Norman "to cure all mortgage, tax, and homeowners' association defaults forthwith"; ordered the sale of the property; and specified the distribution of the proceeds, with the bulk of it to be paid to Jacyra Norman for her community interest and other entitlements under the judgment.

On April 8, 2009, Jacyra Norman filed a motion in the dissolution action, seeking to void the grant deed to Carter, join Carter and "Countrywide Home Loans Inc., now Bank of America" in the action, and enjoin "Countrywide" from selling the property pursuant to foreclosure. On April 22, 2009, the Ventura County Superior Court ordered the joinder of "Countrywide" and Carter and enjoined "Countrywide" from foreclosing and Carter from transferring any interest in the property. The court's subsequent September 21, 2009 order after hearing on the motion "reiterate[d] the order made May 22, 2008 which voided the Countrywide refinance," enjoined "Countrywide" from foreclosing on the property until further court order, voided the conveyance to Carter, awarded Jacyra Norman sole possession, and confirmed her title to the property. The record does not indicate whether this order was recorded.

On December 16, 2009, the Association recorded a notice of delinquent assessment and lien in the amount of $2,365.14 (recorded document No. 20091916242), listing only Carter as the owner of record.

On May 10, 2010, the Ventura County Superior Court denied a motion by BAC "erroneously named herein as 'Countrywide Home Loans, Inc., now Bank of America,'" to set aside the September 22, 2008 judgment and the "6-23-2009" order. The court instead amended and clarified the judgment by granting BAC an "Equitable Lien in the amount of $592,385.53, effective as of June 19, 2007," with 10 percent annual interest from the same date, plus advances, taxes, insurance, fees, and other costs BAC had paid from that date. The signed order was filed August 12, 2010, and recorded on September 3, 2010.

4

**The judicial foreclosure action and events during its pendency**

On November 1, 2010, Citibank filed an action for judicial foreclosure upon the equitable lien, naming Jacyra Norman and Does. (Super. Ct. L.A. County, No. BC448518.) It filed a first amended complaint in the action on January 20, 2011, naming Gregory and Jacyra Norman, William and Debra Carter, and the Association. The first amended complaint alleged the loan was transferred from BAC to Citibank on August 1, 2007, with BAC continuing to service the loan. Citibank alleged the sum of the lien, taxes, insurance, and interest was $807,605.18. It requested that the court enter a judgment declaring that the defendants' "rights, claims, ownership, liens, titles, and demands" were "subject, subsequent, and subordinate to" Citibank's equitable lien and that the defendants "and all persons claiming under her [*sic*] as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the subject Property when time for redemption has elapsed." Citibank recorded a lis pendens on November 3, 2010.

On December 17, 2010, the Association recorded an amended notice of delinquent assessment, naming Jacyra and Gregory Norman, as well as Carter. On March 4, 2011, the Association recorded a notice of default and election to sell referring only to the December 16, 2009 notice of delinquent assessment and identifying it by its recorded document number (20091916242).

On March 29, 2011, the Ventura County Superior Court issued an order clarifying its prior judgment and ruling in the dissolution action. The order awarded title to the property solely to Jacyra Norman, effective September 21, 2009, and declared the deed recorded June 3, 2008, by which Gregory Norman purportedly conveyed the property to Carter, to be void *ab initio*. The court's order was recorded on April 5, 2011.

On February 1, 2012, the Association recorded a notice of trustee's sale. The notice referred to both the original and the amended notices of delinquent assessment and listed the record owner as Jacyra Norman, only.

5

Two days later, on February 3, 2012, Jacyra Norman recorded a grant deed from the Ventura County Superior Court conveying title to her.

On March 22, 2012, the Association foreclosed upon its lien and purportedly acquired title to the property. The trustee's deed on sale was recorded on June 28, 2012. It listed Carter as the trustor and referred only to the December 16, 2009 notice of delinquent assessment (recorded document number 20091916242).

The Association conveyed the property to Playa Holdings, Inc., by a quitclaim deed recorded July 30, 2012. Playa Holdings in turn conveyed the property to Rustling Oaks by a quitclaim deed recorded September 18, 2012.

On November 8, 2012, Bank of America, N.A., assigned to Citibank the equitable lien set forth in the order filed August 12, 2010, in the dissolution action.

On January 11, 2013, Rustling Oaks filed an ex parte application to either file a complaint in intervention in the judicial foreclosure action or shorten time to file a motion to file such a complaint. The trial court denied the application. On January 28, 2013, Rustling Oaks filed and served its motion for leave to file a complaint in intervention, with the hearing scheduled for February 20, 2013.

On January 29, 2013, however, the trial court granted Citibank's motion for summary judgment in the judicial foreclosure action. The judgment signed by the court and filed on March 4, 2013, included findings that Citibank "is the holder of the Equitable Lien which is secured by" the property in issue, and that the amount of equitable lien was $989,085.60 as of January 29, 2013. The judgment ordered the property sold by the sheriff for payment of the equitable lien and provided: "The rights, claims, ownership, liens, titles, and demands, if any, of the Defendants, and each of them, are subject, and subordinate to the Equitable Lien of the Plaintiff, and the Defendants, and all persons claiming under them as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, encumbrancers, or otherwise, shall be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Subject Property when time for redemption, if any, has elapsed."

6

The trial court took Rustling Oaks's motion for leave to file a complaint in intervention off calendar the same day it granted the summary judgment motion. Rustling Oaks did not appeal from the judgment or seek a writ of mandate to compel the trial court to rule on its motion for leave to intervene.

On December 12, 2012,[2] Rustling Oaks recorded a grant deed by the Association in favor Rustling Oaks. The complaint in the present case alleges this was required due to "an error in the Trustee's Deed Upon Sale to" the Association.

**The present case**

### The complaint

Rustling Oaks filed the present case on April 12, 2013, against Citibank and Carter. Its first cause of action sought to quiet title as of July 6, 2012—allegedly the date of the conveyance by the Association to Playa Holdings. It specifically alleged: "Plaintiff is seeking to quiet title against the claim of Defendant Citibank asserted through Citibank's Equitable Lien, Judgment of Foreclosure and Order of Sale, as to the Property. Plaintiff further is seeking to quiet title against any claim of Defendant Carter, as to the Property. The claims of Defendants are without any right whatever, and such Defendants have no right, title, estate, lien, or interest whatever in the above-described property or any part thereof, which is senior to the fee simple ownership interest of Plaintiff."

Rustling Oaks's second cause of action sought declaratory relief. It alleged a controversy "regarding the priority of liens, existence of liens and interests in the Property," with Rustling Oaks contending that the foreclosure upon the Association's assessment lien "forever discharged and extinguished BAC's equitable lien," and Citibank contending "that it was assigned the 2007 Loan and Deed of Trust, that it somehow owns an equitable lien against the Property, and that it is entitled to foreclose on its equitable lien." The cause of action further alleged: "Rustling Oaks asserts that:

_____

[2] The complaint in the present case states this occurred on December 12, 2013, which would be eight months after the complaint itself was filed.

7

(1) Citibank does not own an equitable lien against the Property, nor was it properly assigned any Deed of Trust; (2) Rustling Oaks maintains title to the Property; (3) Rustling Oaks' title to the Property is not subject to the equitable lien asserted by Citibank, or anyone else, and therefore Citibank cannot foreclose on the Property; (4) Citibank's Judgment of Foreclosure and Order of Sale recorded March 15, 2013 is void and invalid, insofar as Rustling Oaks' Motion for Leave to Intervene in the Judicial Foreclosure Action was never considered by the Court." The prayer of the complaint seeks an order declaring, inter alia, that Rustling Oaks "is the fee simple owner of the Property"; Citibank never received any title, interest, or equitable lien against the property; and "the equitable lien asserted by Citibank was extinguished by the [Association's] foreclosure sale."

The third cause of action sought to cancel the "Assignment of Deed of Trust" by Mortgage Electronic Registration Systems, Inc. (MERS), to Citibank recorded April 20, 2011. Rustling Oaks alleges "such transfer was ineffective, and improper, insofar as the 2007 Loan and Deed of Trust was deemed and declared void by the Family Court, and thus could not be transferred, assigned or sold." In addition, Rustling Oaks alleges that MERS "was not the record holder of any beneficial interest" and thus could not transfer anything.

The fourth cause of action sought a temporary restraining order enjoining the sale of the property; preliminary and permanent injunctions "rescinding and cancelling" Citibank's notice of default, the judgment in the judicial foreclosure action, and the notice of sheriff's sale; and preliminary and permanent injunctions preventing Citibank from taking any new steps to sell the property. Rustling Oaks's alleged sale of the property would be inequitable, unjust, and violate due process "[b]ecause no Court . . . has ever determined Plaintiff's rights in an[d] to the Property, which Plaintiff alleges is senior to that of Defendant Citibank's, and because Plaintiff has now acquired fee simple interest in and to the Property . . . ."

8

**Citibank's demurrer**

Citibank demurred to Rustling Oaks's complaint on two theories:  a challenge to the validity of the Association's foreclosure, which ultimately led to conveyance to Rustling Oaks, and res judicata stemming from the judgment in the judicial foreclosure case.  Citibank requested judicial notice of documents submitted in support of its summary judgment motion in the judicial foreclosure action.  The trial court granted the request for judicial notice and sustained the demurrer, without leave to amend, on the basis of res judicata.

Rustling Oaks filed a timely appeal.

## DISCUSSION

**Standard of review**

"On appeal from a judgment after a demurrer is sustained without leave to amend, we assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken.  [Citation.]  We construe the pleading in a reasonable manner and read the allegations in context.  [Citation.]  We determine de novo whether the pleading alleges facts sufficient to state a cause of action.  [Citation.]  We affirm the sustaining of the demurrer if the pleading or matters that are judicially noticeable disclose a complete defense.  [Citations.]  We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.  [Citation.]"  (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1181.)

Res judicata is proper ground for demurrer, if the complaint and judicially noticed facts demonstrate its applicability.  (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 225 (*Planning & Conservation League*).)

**Res judicata**

"Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*).)  "A clear and predictable

9

res judicata doctrine promotes judicial economy." (*Id.* at p. 897.) It also protects the parties from unwarranted burden and expense. (*Ibid.*)

Whether a new cause of action is the same as one in a prior action is not determined on the basis of the legal theory or relief sought, but by whether they are both premised on a violation of the same primary right, i.e., "'the plaintiff's right to be free from the particular injury suffered.'" (*Mycogen*, *supra*, 28 Cal.4th at p. 904.)

"'[I]n the context of a res judicata determination, privity "'refers "to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights."'"'" (*Planning & Conservation League*, *supra*, 180 Cal.App.4th at p. 229.) "One who succeeds to the interests of a party in the property or other subject of the action *after* its commencement is bound by the judgment with respect to those interests in the same manner as if he were a party. However, this rule does not apply where the interest is acquired *before* the commencement of the action." (*Topanga Corp. v. Gentile* (1963) 219 Cal.App.2d 274, 278–279.)

**The trial court properly sustained the demurrer without leave to amend with respect to the first and fourth causes of action, but not the second and third.**

### 1. Rustling Oaks is in privity with the Association.

Rustling Oaks's claim of title to the property is as a successor in interest to the Association, either through a conveyance to Playa Holdings, which in turn conveyed to Rustling Oaks, or through the later conveyance from the Association to Rustling Oaks. The Association was a party to the judicial foreclosure action, was served with process in that action, and had an opportunity to defend the title it purportedly acquired through foreclosure on its assessment lien and purchase at the trustee's sale, then purported to convey to Playa Holdings and Rustling Oaks. The Association apparently decided not to defend its title and its default was duly entered by the court. Citibank's summary judgment motion addressed the bases, validity, and effect of the Association's foreclosure action and included as exhibits certified copies of the Association's CCR's, notices of

delinquent assessments and liens, notice of default, notice of trustee's sale, and trustee's deed on sale.

Rustling Oaks's attempts to avoid a finding of privity with the Association center on the allegation in the first amended complaint in the judicial foreclosure action stating that the Association was "'named herein for notice purposes only,'" and that Citibank alleged no wrongdoing by the Association. Nonetheless, the Association was a party served in the judicial foreclosure action, which sought to establish the validity and primacy of the equitable lien, not to obtain a remedy for "wrongdoing." If the Association wanted to preserve its purported title to the property or avoid potential liability to its successors in interest, Playa Holdings and Rustling Oaks, it was incumbent upon it to defend its purported title. Rustling Oaks's argument flies in the face of the established principle that accords full res judicata effect to a default judgment. "'By permitting his default to be entered he [the defendant] confessed the truth of all the material allegations in the complaint [citations]. . . . A judgment by default is as conclusive as to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on allegations denied by the answer. [Citations.] Such a judgment is res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.'" (*Martin v. General Finance Co.* (1966) 239 Cal.App.2d 438, 443.) "'[I]t is the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity.'" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 869.)

Rustling Oaks also argues it should not be deemed to be in privity with the Association because the trial court did not allow it to intervene in the judicial foreclosure proceeding, and the court therefore was not presented with evidence regarding the merits of the claims it raises in its complaint in the present case. The trial court may have erred by rebuffing Rustling Oaks's attempt to intervene in the judicial foreclosure action. Rustling Oaks's remedy, however, was not to file a new action, but to take further action

11

within the context of the judicial foreclosure case, e.g., move to vacate the judgment pursuant to Code of Civil Procedure section 663 (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736), appeal from the judgment (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295 [nonparty who would be bound by judgment pursuant to res judicata has standing to appeal]), or seek a writ of mandate to compel the trial court to rule on its motion for leave to intervene. Even assuming, for the sake of argument, that the judgment in the judicial foreclosure action was erroneous in some respect, it is, nonetheless, as conclusive as if it were error-free. (*Castro v. Higaki* (1994) 31 Cal.App.4th 350, 359.) The remedy with respect to a judgment a party believes to be erroneous is to appeal that judgment, not file a new action. (*Ibid.*)

Rustling Oaks was thus in privity with the Association, and it is precluded from relitigating all causes of action, as that term is used in the res judicata context, that were determined in the judicial foreclosure action.

**2. The first and fourth causes of action in the present case are barred by res judicata.**

The judicial foreclosure action established the existence, validity, and priority of Citibank's equitable lien against the property with respect to all defendants in that action and "all persons claiming under them." Accordingly, Rustling Oaks's attempt in its first cause of action to quiet its claimed title against Citibank's lien is barred by res judicata. The interest, if any, Rustling Oaks obtained through the Association is subordinate to Citibank's lien. Rustling Oaks may, of course, continue to seek to quiet title against Carter, who did not demur.

The fourth cause of action, seeking injunctive relief against the sheriff's sale ordered by the judgment in the judicial foreclosure action was premised on the allegations that Citibank's equitable lien is invalid or does not have priority over Rustling Oaks's purported title. Because the judicial foreclosure action established the validity and priority of Citibank's equitable lien and directed the sheriff's sale of the property, res judicata also bars the fourth cause of action.

12

### 3.  Res judicata is not a bar to the second and third causes of action.

The second cause of action sought declaratory relief regarding the validity and priority of Citibank's lien, the validity of the judgment in the judicial foreclosure action, and Rustling Oaks's title to the property.  The judgment in the judicial foreclosure case does not reflect a determination of title, but only that Citibank's equitable lien had priority over all other claims and interests.  Accordingly, the second cause of action was not barred by res judicata.  Citibank would more properly have moved to strike certain allegations of that cause of action, but it failed to do so.  The trial court erred by sustaining a demurrer to the cause of action.

Similarly, Rustling Oaks's third cause of action, seeking cancellation of the instrument reflecting an assignment by MERS of a deed of trust to Citibank is distinct from any primary right adjudicated in the judicial foreclosure action.  Indeed, Citibank argues, "the First Amended Complaint in the Judicial Foreclosure Action did not seek to foreclose on the void 2007 Deed of Trust."  Citibank's contention that the assignment to which the cause of action refers was irrelevant to Citibank's equitable lien misses the mark because the issues before the trial court were the sufficiency of the complaint and the res judicata effect of the judgment in the judicial foreclosure action.  No matter how miniscule a benefit Rustling Oaks stands to obtain from the cancellation of the recorded assignment of the void deed of trust, the allegations of the third cause of action are sufficient and fall outside the scope of claims determined in the judicial foreclosure action.  The trial court therefore erred by sustaining a demurrer to that cause of action.

Accordingly, we reverse the judgment.  Rustling Oaks may proceed on the second and third causes of action, but not the first and fourth.

13

## DISPOSITION

The judgment is reversed, although the order sustaining the demurrer with respect to the first and fourth causes of action is affirmed.  Each party will bear its own costs on appeal.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.